# MEMORANDUM OPINION
*(Bench Opinion)*

April 25, 2006

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| LINDA FAYE CARTER | : | Case No. 05-31128 |
| d/b/a ALPINE HIDEAWAY RV | : | Chapter 7 |
| | : | |
| Debtor | : | |

### BEFORE THE HONORABLE RICHARD STAIR, JR.
### UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

FOR THE DEBTOR:

Linda Faye Carter, *Pro Se*
458 Troy Drive
Pigeon Forge, Tennessee 37863

FOR WILLIAM T. HENDON, TRUSTEE:

DAVID H. JONES, ESQ.
Post Office Box 50034
Knoxville, Tennessee 37950

FOR INDYMAC BANK, FSB:

TIMOTHY F. FROST, ESQ.
109 Northshore Drive, Suite 302
Knoxville, Tennessee 37919

APPEARANCES (Continued):

FOR JOSEPH AND BOBBIE KING:

THOMAS LYNN TARPY, ESQ.
Suite 2100, Riverview Tower
900 South Gay Street
Knoxville, Tennessee  37902

FOR THE UNITED STATES TRUSTEE:

PATRICIA C. FOSTER, ESQ.
BECKY H. HALSEY, ESQ.
Howard H. Baker, Jr. United States Courthouse
800 Market Street, Suite 114
Knoxville, Tennessee  37902

FOR MICHAEL CARTER MORE PERFECT
WORLD CHURCH MINISTRIES:

Michael Carter, *Pro Se*
251 Spring Valley Road
Pigeon Forge, Tennessee 37863

1      THE COURT:  The next two motions, one filed by Michael Carter More

2  Perfect World Church Ministries, *pro se*, the other filed by the Debtor, *pro se*, are both

3  entitled, "Ex Parte Emergency Motion to Stay the Trustees Sale of Properties at 251

4  Spring Valley and 458 Troy Drive Scheduled for April 27, 2006 and to Refer This Case

5  for Criminal Investigation."  A number of exhibits are attached to the Debtor's motion.

6  Neither motion is sworn to.  The exhibits are to a large extent, in my estimation,

7  scandalous and have no bearing in this court.  It is my understanding that the Debtor

8  and Mr. Carter are not related.

9       The first issue I need to address is standing, both the standing of the Debtor

10 in a Chapter 7 case and the standing of Michael Carter to come before the court with the

11 present motions.  Standing is a prerequisite for subject matter jurisdiction in the federal

12 courts, requiring a party to allege an actual case or controversy.  *See O'Shea v.*

13 *Littleton*, 94 S. Ct. 669, 675 (1974).  It "is an element of federal subject matter

14 jurisdiction which cannot be waived and may be raised at any time by a party or by the

15 court."  *Yates v. Forker (In re Patriot Co.)*, 311 B.R. 71, 74 (B.A.P. 8th Cir. 2004)

16 (citing *Magee v. Exxon Corp.*, 135 F.3d at 599, 601 (8th Cir. 1998).  Put another way,

17 "[s]tanding depends on 'whether the plaintiff has alleged such a personal stake in the

18 outcome of the controversy as to warrant his invocation of federal jurisdiction and to

19 justify exercise of the court's remedial powers on his behalf."  *Newport Acquisition Co.*

20 *No. 1, LLC v. Schiro (In re C-Power Prods., Inc.)*, 230 B.R. 800, 804 (Bankr. S.D. Tex.

21 1998) (quoting *In re Pointer*, 952 F.2d 82, 85 (5th Cir. 1992)).  "In the Bankruptcy

22 Code, Congress has expanded standing to the full extent permitted by Article III.  For

23 contested matters in a bankruptcy case, any party in interest may be heard, provided that

24 party in interest has standing under Article III."  *C-Power Prods., Inc.*, 230 B.R. at 804.

25 Therefore, in the context of the Debtor's and Mr. Carter's motions, which are in reality

3

objections to the trustee's scheduled April 27, 2006, auction sale of certain real estate in Sevier County, Tennessee, the question is, "[c]an the Bankruptcy Code be properly understood as granting [either of these parties] the right to seek judicial relief in this court[.]" *Barnett Bank of S.E. Ga., N.A. v. Trust Co. Bank of S.E. Ga., N.A. (In re Ring)*, 178 B.R. 570, 575 (Bankr. S.D. Ga. 1995).

The trustee's authority to sell the property of the Debtor's estate is found at 11 U.S.C. § 363 and requires notice and a hearing. Rule 6004 governs the required notice of the sale, provided in material part:

> (a) Notice of proposed use, sale, or lease of property
>
> Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with § 363(b)(2) of the Code.

Pursuant to Rule 2002, notice of a proposed sale of estate property free and clear must be given to "parties in interest" twenty days prior to the hearing date and must contain specific sale information. *See* FED. R. BANKR. P. 2002(a)(2) and (c). Additionally, parties in interest must be given "the time fixed for filing objections," FED. R. BANKR. P. 2002(c), which our Local Rules have fixed at twenty days. *See* E.D. Tenn. LBR 9013-1(h)(1)(vii) and (h)(3).

Although the Bankruptcy Code does not specifically define "party in interest," that term is generally defined in bankruptcy cases as "one whose pecuniary interest is directly affected by the bankruptcy proceeding." BLACK'S LAW DICTIONARY 1122 (6th ed. 1990) (citing *In re Kutner*, 3 B.R. 422, 425 (Bankr. N.D. Tex. 1980)). With regard to cases pending under Chapter 11, a party in interest may be "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an

1  equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). A comparable

2  Code provision does not exist for Chapter 7 cases. The Bankruptcy Code defines

3  creditor as an "entity that has a claim against the debtor that arose at the time of or

4  before the order for relief concerning the debtor," 11 U.S.C. § 101(10)(A), and claim as

5  a "right to payment, whether or not such right is reduced to judgment, liquidated,

6  unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

7  equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

8  　　　　As to Michael Carter, I find nothing in the record to suggest that he has

9  standing to prosecute the motion he has filed. I find nothing to suggest that he has

10  standing to object to the sale. Mr. Carter filed a proof of claim on February 7, 2006, the

11  day after the February 6, 2006, expiration of the bar date for filing claims in this case,

12  asserting that he is a creditor holding a claim secured by real estate and "all assets of

13  Debtor." Mr. Carter has not attached any documents to the claim evidencing any

14  financial obligation owed him by the Debtor, nor has he attached any documents

15  evidencing that he holds a security interest in any real estate or other property that is

16  now property of the estate. Although he has testified today that he has documentation

17  to support his claim, none of which the court has been made privy to, he cannot or will

18  not state the basis upon which that alleged claim is grounded. He testified that he is, in

19  effect, the sole proprietor of More Perfect World Church Ministries. I recall, however,

20  and take judicial notice of, Exhibit 4 that was introduced into evidence at the October 4,

21  2005 trial on the conversion/dismissal motions filed by the Kings and the United States

22  Trustee which established that More Perfect World Church Ministries is an active non-

23  profit corporation in which Calvin Michael Carter, 251 Spring Valley Road, Pigeon

24  Forge, Tennessee, is the registered agent for service of process. I do not know what

25  More Perfect World Church Ministries is, but I do know that there is nothing in this

5

record of this bankruptcy case to evidence that it has an interest in the real property that is the subject of the April 27 sale. There is also nothing in the record to evidence that Mr. Carter, individually, has an interest in the real estate.

Again, taking judicial notice of the statements and schedules filed by the Debtor, all of which were signed under penalty of perjury, I find no listing of Mr. Carter or More Perfect World Church Ministries as creditors or as the holders of any interest in real or personal property scheduled by the Debtor as assets of her bankruptcy estate. The deed of trust and promissory note signed by the Debtor on August 29, 2000, surrounding her purchase of the 13 acre tract from the Kings which were introduced into evidence at the October 4, 2005 hearing as Exhibits 1 and 2, were signed by "Linda F. Carter," the Debtor, individually. Once again, I take judicial notice of these exhibits. There is nothing to establish any claim of Michael Carter or More Perfect World Church Ministries to an interest in this property at the time it was acquired by Ms. Carter from the Kings or at any other time prior to the date the Debtor commenced her bankruptcy case on March 1, 2005. If I gauge Mr. Carter's testimony correctly, it is that he believes the filing of a document entitled "Objection" in and of itself gives him standing and is sufficient to stop the sale. It does not and is not.

With respect to Ms. Carter, Chapter 7 debtors do not customarily have standing to object to proofs of claim or the sale of estate property unless there is a surplus. *See 60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)*, 218 F.2d 109, 115 (2nd Cir. 2000) ("It is well-established that a Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid."); *Kieffer v. Riske (In re Kieffer-Mickes, Inc.)*, 226 B.R. 204, 208-09 (B.A.P. 8th Cir. 1998) (holding that Chapter 7 debtors do

not have standing to object to claims or orders unless they have a pecuniary interest, that is, unless there is a surplus); *In re Vona*, 333 B.R. 191, 197 (Bankr. E.D.N.Y. 2005) ("In general, bankruptcy lawyers and judges pose the operational question for determining standing by asking whether a person or entity is 'in the money.'"); *In re I & F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998) (collecting cases evidencing the lack of a Chapter 7 debtor's standing).

A recent case, *Beaulac v. Tomsic (In re Beaulac)*, 294 B.R. 815, 820-21 (B.A.P. 1st Cir. 2003), articulates it rather well, I think:

> A Chapter 7 debtor may be ready to engage in any number of disputes, but within the bankruptcy realm, they may not be his fights to fight. The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in non-exempt property of the estate at the commencement of the case. *See* 11 U.S.C. §§ 541(a), 704. Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property . . . Thus, normally it is the trustee alone, as distinguished from the chapter 7 debtor, who possesses standing to appeal from bankruptcy court orders which confirm or reject sales of property of the estate . . . A Chapter 7 debtor qualifies as a 'person aggrieved' for purposes of appellate standing only if he can demonstrate that defeat of the order on appeal would result in a surplus distribution to him or would affect his bankruptcy discharge.

The trustee has noticed for an auction sale on April 27, 2006, both the

7

1  campground, which I understand consists of 12.77 acres more or less, and the Debtor's

2  residence.  The campground, I believe, is encumbered with a lien in favor of Mr. and

3  Mrs. King, while the residence is encumbered with a lien of IndyMac Bank.  Agreed

4  orders have been entered in both instances modifying the automatic stay.  On

5  December 16, 2005, an Agreed Order Resolving Motion to Lift Automatic Stay Filed

6  by Joseph D. King and Bobbie Rae King was entered that resulted in the termination of

7  the stay as to the Alpine Hideaway RV property, that is, the campground property.  That

8  Order provided, however, that the trustee retains his interest in that property pending

9  further order of the court or until he abandons his interest in the property.

10  On January 30, 2006, an Agreed Order Resolving Motion for Abandonment

11  and Relief From the Automatic Stay Filed by IndyMac Bank, F.S.B. was entered which

12  provides that the trustee will have until May 15, 2006, to obtain a contract to sell that

13  property.  Pursuant to that Agreed Order, if the trustee does not have a contract in place

14  by May 15, 2006, the automatic stay is to be terminated with regard to that property.

15  Again, the trustee has noticed both properties for sale on April 27, 2006, at 10:00 a.m.

16  The properties are located in Sevier County, Tennessee.  In Schedule A, the Debtor

17  valued the campground at $1,300,000.00 subject to the secured claim the Kings

18  scheduled at $695,731.15.  Any equity in that property existing at the time of

19  bankruptcy will have eroded due to increased interest and attorney fees accruing on the

20  Kings' claim.  The Debtor scheduled the residence at a value of $124,000.00 subject to

21  IndyMac's secured claim of $97,428.44.  The automatic stay motion filed by IndyMac

22  Bank, F.S.B. on December 6, 2005, indicated a balance as of the day of that motion at

23  some $106,000.00, so the liens are, of course, increasing, again, to further erode any

24  equity in the property.  At the October 4, 2005 hearing, the Debtor testified that she had

25  not had the property appraised, but she based her values on the $100,000.00 per acre

1    that others she asserted had received for land sold off the parkway there in Pigeon

2    Forge.

3            The trustee has not fixed a minimum bid price for the property in his notice

4    of sale, but, of course, without a bid that equals or exceeds the amount of the liens

5    encumbering the property, there will be no sale unless the lien holders acquiesce and

6    consent to that sale.  Any surplus funds would come into the estate for the benefit of

7    unsecured priority and nonpriority creditors.

8            In her schedules, Ms. Carter listed $793,159.59 in secured debt.  Again, that

9    includes the King and IndyMac Bank debts which will have now increased substantially

10   due to the accruing interest and attorney fees.  She also listed $3,400.00 in unsecured

11   priority debt and unsecured nonpriority debt was listed at approximately $91,000.00, for

12   total debts of some $887,000.00 plus, compared to all her assets which she scheduled

13   with values totaling $1,452,050.00 and including $28,050.00 in personal property.  Not

14   including the one filed by Michael Carter More Perfect World Church Ministries, some

15   eighteen claims have been filed, totaling $387,000.00, and including unscheduled debts

16   of $75,000.00 owed to the Internal Revenue Service and $14,720.00 owed to the

17   Tennessee Department of Revenue.  Again, those were not scheduled debts.

18           As I indicated, relief from the automatic stay has been granted by agreement

19   with the trustee as to both the campground and residential properties.  The total amount

20   of the claims, secured and unsecured, filed is approximately $1,100,000.00 and, as I

21   indicated, the secured claims will now be considerably higher than they were when this

22   case was filed in March 2005.

23           I cannot unequivocally say that Ms. Carter has no monetary interest in the

24   property.  It may sell for something in excess of the amount necessary to pay all claims,

25   all priority and nonpriority unsecured debt and expenses of administration.  But I can

1    say if that occurs, it will be extremely unusual. I do not recall that I have seen that

2    occur before in the twenty years that I have been on the bench, but I would not

3    unequivocally say it has not. In my estimation and it is my finding that this Debtor does

4    not have standing to oppose the sale. She simply does not have an interest in its

5    outcome. Its outcome will go to satisfy the claims of secured creditors first,

6    administrative expenses, priority claims, and nonpriority unsecured claims. The

7    thought that there might be some left over is unlikely.

8        Another ground, however, upon which I must deny the motions are the

9    untimeliness of the objections. Pursuant to the Local Rules and as clearly set forth on

10    the Notice of Trustee's Intent to Sell Property by Public Auction filed by Mr. Hendon

11    on March 15, 2006, the objection time for the proposed sale was twenty days. The

12    twenty-day passive notice period expired on April 4, 2006, or, if one wants to apply

13    Rule 9006(f), which adds an additional three days for service by mail, expired on

14    April 7, 2006. No objections were filed by that date. Both Mr. Carter and the Debtor

15    were served with the notice. Mr. Carter stood up and testified that he received it, stood

16    up and testified that he helped show the property, and met with Mr. Phillips, the

17    auctioneer. He has been aware of this sale at all times. He appears to be acting as

18    counsel to the Debtor, even though he is not an attorney and has no standing or

19    authority to do so. The Debtor was aware of the sale. She has been aware of what has

20    gone on in this bankruptcy case from day one. The bottom line is that the motions are

21    untimely. It would be unfair and inappropriate to allow these 11th hour objections to

22    thwart the sale.

23        The Supreme Court in *Taylor v. Freeland & Kronz*, 112 S. Ct. 1644, 1648

24    (1992), stated, "[d]eadlines may lead to unwelcome results, but they prompt parties to

25    act and they produce finality." There are a number of cases. I have cases to this effect:

1    *In re Munoz*, No. 05-36159, slip op. at 2-4 (Bankr. E.D. Tenn. Jan. 24, 2006) (denying

2    the trustee's motion to reconsider late-filed objection to motion for relief); *Roberts v.*

3    *Webb (In re Webb)*, No. 03-3149, slip op. at 3 (Bankr. E.D. Tenn. Nov. 10, 2003)

4    (quoting *Taylor* and denying the trustee's motion to set aside dismissal).

5        This is an advertised sale.  As I recall Mr. Phillips' testimony, on behalf of

6    Powell Auction Company, he testified that a number of brochures, some 4,000 I think

7    he said, have gone out.  He has had contact with forty to sixty individuals.  The sale is

8    not automatic by any stretch of the imagination.  If the trustee is not satisfied with the

9    bids that come in, he has reserved the right to refuse the bids.  This is not an absolute

10    auction; most sales through the bankruptcy court are not.  This is the trustee's auction.

11    It is for the benefit of creditors.  Mr. Hendon is an experienced trustee.  I am satisfied as

12    to the integrity of the auction.  If it does not bring enough, the property will not be sold.

13    Mr. Carter's statements that his having to be here on Thursday kept him from going out

14    and trying to secure money just does not carry any weight with the court.  Again, I will

15    be happy to continue the hearing on the objection to another date, if that is what is

16    desired.

17        This Memorandum constitutes findings of fact and conclusions of law as

18    required by FED. R. CIV. P. 52(a).  I will not ask the court reporter to transcribe my

19    opinion.  If it is transcribed, an original only will be prepared and delivered to me for

20    such additions and corrections as I deem appropriate without, of course, making any

21    substantive changes.  An order commensurate with my opinion will be entered.  The

22    emergency motions will both be denied.

23    FILED:  May 22, 2006

24        /s/ *RICHARD STAIR, JR.*
    RICHARD STAIR, JR.
25        U.S. BANKRUPTCY JUDGE